STATE OF MISSOURI, Respondent, v. PORTER WILKES and OAT MORRIS, Appellants.

Springfield Court of Appeals, April 7, 1913.

1. CRIMINAL LAW: Gambling: Sufficiency of Information. An information which charged that defendants unlawfully bet twenty-five cents upon a game of cards, commonly called "seven up," then and there played by means of a certain gambling device, to-wit, a pack of cards, adapted for the purpose of playing games of chance for money and property, *held*, to sufficiently charge the offense of gambling.

2. ————: Evidence: Reversal for Want of: When. An appellate court will not reverse a judgment in a criminal case on the ground that the verdict is against the evidence, unless

State v. Wilkes.

there is a total absence of evidence, or unless it fails so completely to support the verdict that the necessary inference is that the jury acted from prejudice or partiality.

3. ————: ·Evidence: Finding of Jury. It is not the function of the appellate court to weigh the evidence, there being substantial testimony from which the jury might reasonably arrive at its verdict.

Appeal from Dade Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

.No briefs filed.

FARRINGTON, J.—The appellants were tried and convicted in the circuit court of Dade county on an information filed by the prosecuting attorney charging that "the said defendant Porter Wilkes and Oat Morris on the ——— day of March A. D. 1912 at said county of Dade did then and there unlawfully bet a sum of money to-wit, 25 cents upon a game of cards commonly called 'seven up,' then and there played by means of a certain gambling device to-wit, a pack of cards, adapted for the purpose of playing games of chance for money and property contrary to the form of the statute in such cases made and provided and against the peace and dignity of. the State of Missouri." . The punishment was assessed by the jury at a fine of fifty dollars against each defendant, and they have appealed.

The information sufficiently charges the offense and follows, substantially, the often approved form. No error is claimed in the giving or refusal of instructions. The record shows an arraignment of the defendants and that they pleaded not guilty. The trial was had before a jury regularly impaneled.

The State offered two witnesses. One of these, the manager of the local telephone company whose office was next to the building in which the defendants are

charged with gambling, testified that he saw the defendants in there and heard them gambling on the occasion in question. Houston Duncan, a deputy sheriff, testified that in the month of February, 1912, he stood for two or three hours on the outside of the building on a dark, cloudy night, during a rain, and peeped in through a window over which on the inside was hung a curtain, and says that he saw the two defendants playing cards with a deck of cards and saw them have money in their hands and saw and heard them betting on the game; that the curtain was worn and slit to some extent and that he could see through it and discern who they were and what they were doing.

The defendant Wilkes conducted a poultry business in the building in question and defendant Morris was his employee. They testified in their own behalf that they were playing for fun only with a deck of cards on the occasion in question, and that in the course of the game they did, in fun, bet sums ranging from twenty-five cents to twenty-nine dollars, and at one time bet a cow. Defendants swore they did not play for money and Wilkes testified he had never played any game for money in his life. There is testimony in the record of representative citizens who say that at the request of the defendants they went to the window at a subsequent time, but at about the same hour, for the purpose of ascertaining whether Duncan could have seen and heard what he testified to, and they stated that no one could see through the curtain and discern anything other than the mere form of a man.

This question, however, was one of fact, and as the testimony of Duncan and that of the defendants was in direct conflict the issue was properly submitted to the jury. An appellate court will not reverse a judgment in a criminal case on the ground that the verdict is against the evidence, unless there is a total absence of evidence, or it fails so completely to support the verdict that the necessary inference is that the jury

must have acted from prejudice or partiality. [State v. Faught, 140 Mo. App. 369, 372, 124 S. W. 62.] It might be concluded that the preponderance of the evidence is in favor of the story told by the defendants as the jury might not have believed that an officer would stand out in the rain in the month of February for two or three hours for the purpose of peeping through a slit in a curtain to satisfy himself that defendants were gambling before he went in and told the players they would be arrested the following morning—especially when he had to run and hide behind chicken coops whenever anyone came along the street to prevent himself being seen in his vigil. But, it is not our function to weigh the evidence, there being substantial testimony from which the jury might reasonably find as it did. The law is intended to prevent gambling and it should be upheld. Finding no error in the record, the judgment is affirmed. All concur.